487 So.2d 218 (1986)
Allie B. RUTLEDGE
v.
William O. RUTLEDGE, III.
No. 55459.
Supreme Court of Mississippi.
April 16, 1986.
L.C. James, Jackson, Dennis W. Voge, Mitchell, Eskridge, Voge, Clayton & Beasley, Tupelo, for appellant.
Roger H. McMillan, Jr., Darden, Sumners, Carter, Trout & McMillin, New Albany, for appellee.
Before WALKER, P.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court.
William O. Rutledge, III, (Bill) and Allie Bridgforth Rutledge were divorced by decree of the Chancery Court of Union County on January 29, 1982. They concluded an agreement as to child custody and support incident to this divorce. It provided that Allie was to receive primary custody of the youngest child, Stewart, and of the middle child, Bridgforth. Her husband was to receive custody of the eldest child, Will Rutledge. The agreement also established rights of visitation of both parents and other details. The decree also contained the following provision:
ORDERED, ADJUDGED AND DECREED that, should either party desire to permanently remove his or her residence from Union County, Mississippi, that such change, insofar as it affected the residence of either of the two older children of the parties, would be deemed a material change in circumstance, requiring the prior consent of the other party hereto, or in the alternative, the approval of the Chancery Court of Union County, Mississippi, after hearing thereon. It is further ordered that for purposes *219 of such hearing, both of the two older boys are of sufficient maturity and intelligence to form rational and informed opinions as to whether such a move would be in their personal best interest or not, and that either of such children affected by such a proposed move should be allowed to testify as to his preferences, either in open court or in chambers, and that the Chancellor hearing such matter should give at least such weight to the child's preferences as would be given to a child of twelve (12) years under Section 93-11-65 of the Mississippi Code of 1972, annotated, as amended.
After the divorce Bill Rutledge married Gayle Mercier, a widow with three children.
After these events Allie Rutledge decided to move to the Jackson area, where she had an opportunity to begin a new career as a cosmetics salesman. Bill Rutledge, hearing of her plans, filed a petition with the chancery court to modify the original decree so as to give him primary custody not only of Will Rutledge, but of the middle child, Bridgforth Rutledge. At the time of the petition, Will was eleven years old, Bridgforth was ten years old and the youngest child, Stewart, was three years old. Allie answered and filed a cross bill praying that Bill be held in contempt of court for failing to provide new drapes and rugs for the family home as required by the original decree. She later filed an amended cross bill asking that she be granted primary custody of the oldest child, Will, so he could accompany her to Jackson and all the children would be together.
The cause was heard on May 24 and 25, 1983. On June 28 the chancellor issued an opinion finding that Allie's move to Jackson did not of itself constitute a material change of circumstances adversely affecting the best interests of the children. However, the chancellor went on to state that the custody arrangement was "a joint custody arrangement and not practical nor to the best interests of the child (Bridgforth) now." Therefore, he granted Bill Rutledge's petition for custody of Bridgforth, and denied the cross petition of Allie. Stewart was to remain in the custody of Allie. A decree based upon this opinion followed on July 7. Shortly, thereafter, Allie Rutledge perfected this appeal.

ISSUES OF LAW

A. CUSTODY OF BRIDGFORTH
It is the established rule of Mississippi that before any divorce decree can be modified to effect a change in child custody, the chancellor must find that there has been a substantial change in circumstances and that this change has had an adverse effect upon the child in question. See e.g., Pearson v. Pearson, 458 So.2d 711 (Miss. 1984); Denney v. Denney, 453 So.2d 693 (Miss. 1984); Brocato v. Walker, 220 So.2d 340 (Miss. 1969). In the present case, the chancellor made an explicit finding that Allie Rutledge's proposed move to Jackson was not a material change of circumstances which would adversely effect Bridgforth. The chancellor changed the custody of Bridgforth anyway. His explanation was: "[i]t would be impossible to continue under the old custody and visitation agreement where it is agreed that Bridgforth should spend six days out of each 14 with his father. The court considers this agreement to be a joint custody arrangement and not practical nor to the best interest of the child now." (Emphasis in original).
This is a very unusual explanation. In the first place the arrangement set up by the original divorce decree lacks several of the essential characteristics of joint custody. One commentator has remarked:
The essence of joint custody is that both parents share responsibility and authority with respect to the children. This involves parental consultation and agreement on all major decisions affecting the children. The decision making process thus approximates that of an intact nuclear family. Parents with joint custody make joint decisions on all matters having a significant impact on their children's lives.

*220 (Miller, Joint Custody XIII, Family Law Quarterly 345, 360 (1979).
Such a description hardly applies to the situation of the Rutledges. The divorce decree by its terms unambiguously assigns primary custody of Bridgforth to Allie Rutledge and primary custody of Will to Bill Rutledge. Nothing in the decree bestows on the non-custodial parents any legal power with regard to decisions affecting the child in the other parent's custody. Moreover, the record shows that there is substantial animosity between Bill and Allie, and therefore, it is manifestly impossible for their relation, vis-a-vis the children, to approximate that of an "intact nuclear family." Miller's view of the nature of joint custody is substantially similar to that subsequently adopted by the Mississippi Legislature. The applicable statute is Mississippi Code Annotated, Section 93-5-24 (Supp. 1985). It went into effect after the present case was tried. Appellee's brief asserts that because of the amount of time Bill was allowed to spend with Bridgforth, the chancellor was justified in holding that a de facto joint custody arrangement existed. No case could be found in which it was held that such a claim was valid. Miller states flatly "the claim that joint legal custody and sole custody with liberal visitation rights are indistinguishable is not true." Miller, supra, at 361.
Even if this was a joint custody agreement, that, of itself, does not change the standard the chancellor is bound to apply. Agreements and stipulations between parties to a divorce have binding legal force only to the degree that they are recognized by the court and incorporated into the decree. Reno v. Reno, 253 Miss. 465, 176 So.2d 58 (1965). It follows that even if there were a joint custody arrangement, the chancellor could modify the original decree only if he found there had been a material change of circumstances adversely affecting the child. Since he explicitly found that that had not occurred, his disposition of the custody of Bridgforth was manifestly erroneous. Therefore, it is subject to reversal by this court.

B. CUSTODY OF WILL RUTLEDGE
The propriety of changing the custody of Will is governed by precisely the same consideration as in the case of Bridgforth. The chancellor held that Allie's proposed move to Jackson would not constitute a material change of circumstances adversely affecting either child. Therefore, he had no basis for depriving the father of custody and his dismissal of Allie's petition for a change of custody of Will was correct.
Because we are reversing on the custody issue, it is not necessary to discuss the other assignments of error.
The chancellor's decree is affirmed as to the dismissal of Mrs. Rutledge's cross-petition, but reversed as to the original petition of Mr. Rutledge.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.