ISHEE, J.,
for the Court.
¶ 1. Tim Porter (“Tim”) and Rachel Porter Spivey (“Rachel”) were granted an irreconcilable differences divorce in October 2000. Under the custody agreement signed by both parties and incorporated into their divorce decree, Tim and Rachel agreed to share joint physical and legal custody of their three children from the marriage.
¶ 2. In late 2005, Rachel’s new husband accepted a job in Memphis, Tennessee. Subsequently, in February 2006, Rachel filed a Petition to Modify Defendant’s Periods of Physical Custody due to her anticipated move to Memphis. Tim answered Rachel’s petition and counter-petitioned for sole physical custody, arguing that the move to Memphis would constitute a material change in circumstances adverse to the interests of the children. The chancellor found that the move to Memphis would constitute a material adverse change, so he conducted a custody analysis as set out by our supreme court in the seminal case of Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). After conducting the Al-bright analysis, the chancellor concluded that the best interests of the children would be served by having them remain in Jackson and awarded sole physical custody to Tim.
113. In August 2006, four weeks after the chancellor awarded sole physical custody to Tim, Rachel’s new husband lost the job in Memphis. Rachel then filed a motion for relief under Rule 60(b) of the Mississippi Rules of Civil Procedure, seeking to set aside the previous order modifying custody. The chancellor denied that motion in September 2006. It is from the denial of that motion that Rachel now appeals, arguing, among other things, that the chancellor erred in denying Rachel’s Rule 60(b) motion to set aside the judgment, as the anticipated move to Memphis never occurred.
¶ 4. After careful consideration, we affirm the chancery court’s decision to award sole physical custody of the couple’s children to their father. However, with regard to the mother’s visitation rights, we reverse and remand the case for further proceedings consistent with this opinion.
STANDARD OF REVIEW
¶ 5. In matters concerning child custody, “[the appellate court] will not reverse a [cjhancery [c]ourt’s factual findings, be they of ultimate fact or of evi-dentiary fact, where there is substantial evidence in the record supporting these findings of fact.” Smith v. Jones, 654 So.2d 480, 485 (Miss.1995) (quoting Cooper v. Crabb, 587 So.2d 236, 239 (Miss.1991)). Furthermore, the chancellor’s findings will not be disturbed when sup ported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard. Williams v. Williams, 656 So.2d 325, 330 (Miss.1995); Smith, 654 So.2d at 485; Chamblee v. Chamblee, 637 So.2d 850, 860 (Miss.1994).
DISCUSSION

(1) Child Custody

¶ 6. The facts of this case present an interesting legal question that, to our *473 knowledge, has never been addressed in the courts of this state. The supreme court has previously held that the prerequisites to the modification of a child custody agreement are the following: “(1) proving a material change in circumstances which adversely affects the welfare of the child and (2) finding that the best interest of the child requires the change of custody.” Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss.1996) (quoting Smith, 654 So.2d at 486). Put another way, in order to bring about a custodial modification, the moving parent must show by a preponderance of the evidence: “(1) that a substantial [or material] change in circumstances has transpired since issuance of the custody decree; (2) that this change adversely affects the child’s welfare; and (3) that the child’s best interests mandate a change of custody.” Mabus v. Mabus, 847 So.2d 815, 818(¶ 8) (Miss.2003) (citing Bubac v. Boston, 600 So.2d 951, 955 (Miss.1992)). If the chancellor makes affirmative findings of fact on the first two elements under the Mabus formulation of the test, then the chancellor is obligated to engage in the familiar twelve-factor analysis established in Albright to determine if the best interests of the child or children would be served by ordering a change in custody in accordance with the third element of the Mabus formulation. Mabus, 847 So.2d at 820(¶ 20) (citing McGehee v. Upchurch, 733 So.2d 364, 369(¶ 21) (Miss.Ct.App.1999)).
¶ 7. This Court has previously recognized that one parent’s change in location can serve as a material change sufficient to trigger an Albright analysis and a modification of custody where the parents share joint physical custody, as Rachel and Tim did in this case. McRee v. McRee, 723 So.2d 1217, 1219-20 (¶¶10, 11) (Miss.Ct.App.1998). We note that nothing in this opinion is meant to upset the long-standing rule that the relocation of a parent with sole physical custody does not, by itself, rise to the level of a material adverse change. See Bell v. Bell, 572 So.2d 841, 846 (Miss.1990); Rutledge v. Rutledge, 487 So.2d 218, 220 (Miss.1986); Lambert v. Lambert, 872 So.2d 679, 685(¶ 24) (Miss.Ct.App.2003).
¶ 8. The question we must now answer is what effect, if any, to give to a court order purporting to bring about a custodial modification between two parents with joint physical custody when that order is predicated on anticipated events that never actually occurred. In this case, the chancellor made factual findings that Rachel’s anticipated move to Memphis would be an adverse material change sufficient to necessitate an Albright analysis. The chancellor appointed a guardian ad litem who recommended that staying with Rachel would be in the children’s best interests. Nevertheless, it is the chancellor’s decision whether or not to accept the guardian ad litem’s recommendation. After conducting an Albright analysis, the chancellor concluded that the best interests of the children would be served by awarding sole physical custody to Tim and having them remain in Jackson. However, the anticipated adverse material change in circumstances — the move to Memphis— never actually occurred.
¶ 9. Faced with this problem, we could simply mandate that any application for a modification of custody based on an adverse material change in circumstance would not be ripe until after the adverse change has actually occurred. This rule would be supported by the current language of our case law, which makes reference to the material change as having already occurred. See Mabus, 847 So.2d at 818(¶ 8) (stating that in order to bring about a custodial modification, a substantial change must have “transpired” since the issuance of the original custody de *474 cree); Touchstone, 682 So.2d at 377 (stating that a finding of a material adverse change is necessary to bring about a custodial modification). Such a rule, however, would create unnecessary hardship for many parents and other custodians. Under this type of rule, for example, Tim would have been obliged to wait until Rachel moved with the children to Memphis before filing for modification. Under our current system, Rachel would then have been required to return to Jackson to respond and defend.
¶ 10. For the foregoing reasons, we reject a blanket ban on all modifications based on anticipated adverse material change. We find that the chancellor should have conducted an Albright analysis after the Rule 60(b) motion was filed to reevaluate the factors in light of the mother’s change in circumstances. However, we recognize that the decision was within the chancellor’s discretion and find this error to be harmless.
¶ 11. We need also to address Rachel’s Motion to Recuse the Judges in Chancery Court District 11. The motion was filed based on the fact that Tim’s wife, Samantha Porter, is an attorney specializing in family law who is frequently listed as the attorney of record in cases assigned to the chancellors of that district. Specifically, Rachel was concerned that, because Samantha had a number of cases that were assigned to the Honorable William Joseph Lutz, he may have developed pre-existing opinions of her that could potentially interfere with his impartiality. However, Samantha’s practice before Judge Lutz was primarily ex parte. He stated that he had no recollection of Samantha ever trying a case before him, nor did he have any preconceived notions about her that would interfere with his impartiality. We are mindful that “[t]he decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards.” Bryan v. Holzer, 589 So.2d 648, 654 (Miss.1991). Judge Lutz believed that he had the ability to act fairly and impartially in matters related to this case, and there is nothing in the record to indicate that he did any differently. Accordingly, we find no error with his decision not to recuse himself.
¶ 12. We, therefore, affirm the chancery court’s judgment granting sole physical custody to Tim.

(2) Visitation Rights

¶ 13. The chancery court granted Rachel visitation rights with her children in Memphis on designated weekends and holidays. Because Rachel’s anticipated move to Memphis never occurred, the visitation schedule dividing the children’s time between Jackson and Memphis must be modified. We, therefore, reverse and remand this matter to the chancery court for resolution of Rachel’s visitation rights.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF MADISON COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND THE APPELLEE.
KING, C.J., MYERS AND LEE, P.JJ., CONCUR. IRVING, BARNES, ROBERTS, AND CARLTON JJ., CONCUR IN RESULT ONLY. GRIFFIS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY CHANDLER, J.